GEORGE HOUSTON *vs.* ALFRED C. NOWLAND *et al*, GAR-
NISHEES of WILSON.—*E. S. June*, 1836.

It has been settled in this State, that a deed made by a debtor in failing circumstances to trustees, for the benefit of all his creditors is valid, as being founded upon a good and valuable consideration; and in such case, it is immaterial to the validity of the instrument, whether the intervening assent of the creditors to its execution is shown or not.  :

If the deed is made directly to the creditors their assent would be necessary, but if executed to trustees for their benefit, the legal estate passes to and vests in them, though the creditors are not assenting or parties to the conveyance.

A deed made by a debtor in *Delaware*, to trustees for the benefit of his creditors in conformity with the laws of that State, but not executed, acknowledged and recorded, according to the laws of *Maryland*, will not operate to transfer real estate in the latter State; but such a deed if it embrace the rights and credits of the debtor, will transfer to the trustees for the benefit of his creditors, the balance of the purchase money of such real estate, where the debtor had previously to its execution contracted to sell the estate to a third person, received part of the purchase money, and given a bond to convey the legal title upon the payment of the whole thereof.

The debtor under these circumstances, has no interest except the dry legal title, which he holds in trust for the purchaser or his legal representatives, and which he is bound to convey, upon payment of the balance of the purchase money to his trustees. Such an interest not being a beneficial one, is not subject to the operation of an attachment.

A deed executed as above, if it include the choses in action of the debtor, will operate to transfer them to the trustee, at least in equity; and leaving nothing more in the grantor than a dry legal title, scarcely more than a *scintilla juris*, an attachment laid upon his interest cannot be supported.

APPEAL from *Cecil* county court.

This was an attachment founded on a warrant from a justice of the peace of Cecil county, issued on the 4th August, 1828, upon the affidavit of *George Houston*. The cause of action was a judgment, which the appellant recovered against *David Wilson*, on the 11th June, 1828, in the *State of Delaware*, and for wheat sold him in 1828. The sheriff laid the attachment on certain lands of *Wilson*, in the possession of *A. C. Nowland*, and certain credits in the hands of the other appellees as his garnishees. And the cause was submitted to the county court by the plaintiff and garnishees, upon the following statement of facts.

It is admitted that the said *David Wilson*, in the said proceedings mentioned, was at the time of the issuing of the said attachment, *bona fide*, indebted to the plaintiff in the sum of $1,352 24, that on the 28th of July, 1828, the said *David Wilson* at *Cantwell's Bridge* in *Newcastle* county, *State of Delaware*, executed and delivered some time after sun-down of that day, the following deed, to wit:

"This indenture made the twenty-eighth day of July, in the year of our Lord one thousand eight hundred and twenty-eight, between *David Wilson of Cantwell's Bridge in Newcastle county and State of Delaware*, merchant, of the one part, and *Samuel Thomas, Arnold Naudain*, Esq. *and Daniel Corbit*, all of the same county and *State*, of the other part, Whereas the said *David Wilson* stands indebted to divers persons in several considerable sums of money; and whereas the said *David Wilson* is seized in his demesne as of fee, of and in divers tracts of land and real estate, herein more particularly described, and also possessed of and entitled to certain goods, wares and merchandise, household furniture, farming stock and utensils, and other personal effects; and there are divers debts and sums of money due and owing to the said *David Wilson* by bond, note and book account, and whereas the said *David Wilson*, having met with divers losses and misfortunes, whereby the said *David Wilson* is unable to pay and discharge the several debts due and owing from him, but is willing to assign, convey and make over,

61      v.7

for the use and benefit of all his creditors, the whole of the real and personal estate of every description whatsoever, of which the said _David Wilson_ is seized, possessed, or in any manner entitled unto.   Now this indenture witnesseth, that the said _David Wilson_, for and in consideration of the sum of one dollar, to him in hand paid by the said _Samuel Thomas_, _&c._ the receipt whereof is hereby acknowledged, and for other good causes and considerations, the said _David Wilson_, thereunto especially moving, hath granted, bargained and sold, and by these presents doth grant, bargain and sell, unto the said _Samuel Thomas_, _&c._ their heirs and assigns forever, all the following described real estate, to wit: A tract and plantation of land situate in _Appoquinimink_ hundred, late the property of _Joshua Carter_ and _Ann Carter_, his wife, adjoining lands of _Samuel Thomas_ and _John C. Corbit_, containing seven hundred and fifty acres, be the same more or less.   A tract of land situate in _St. George's hundred_, adjoining lands of _Samuel Thomas_ and others, containing one hundred and forty acres, be the same more or less, one brick messuage and lot of land, containing fifteen acres, be the same more or less, with a brick storehouse and frame building thereon, one lot of land with two frame granaries, situate on the _Appoquinimink_ creek, and one other lot of land with a frame building thereon; and also a lot of land adjoining the tan yard belonging to the heirs of _Pennell Corbit_, deceased, containing nineteen acres, be the same more or less; and also all other real estate of which the said _David Wilson_ may be seized and possessed of, or in any manner entitled to.   And the said _David Wilson_, by these presents, doth grant, bargain, sell, assign, transfer and set over, unto the said _Samuel Thomas_, _Arnold Naudain_, _Esq._ and _Daniel Corbit_, all goods, wares and merchandise, household furniture, farming stock and utensils, all debts due and owing by bond, note, book account, or by any writing whatever, and also all other the goods and chattels, moneys, debts, effects and estate of him, the said _David Wilson_ whatsoever, or wheresoever, or in or to which he the said _David Wilson_, is in any way interested

or entitled. To have and to hold, all the above described estate, rents, profits and produce thereof, and also all and singular the said goods, wares, merchandise, household, farming stock and utensils, debts or sums of money and all other personal estate and effects, intended herein and hereby to be granted, bargained and sold, and assigned unto the said *Samuel Thomas, &c.* their heirs and assigns forever, upon trust and to and for the intents and purposes herein-after mentioned and declared, concerning the same, that is to say, upon this special trust and confidence, that they the said *Samuel Thomas, &c.* shall sell and dispose of all the said real and personal estate, hereby intended to be granted, bargain-ed, sold and assigned, for such price or prices as can be reason-ably had for the same, and at such credit as shall be deemed best for the interest of my creditors, and do and shall by such careful ways and means as they the said *Samuel Thomas, &c.* in their discretion shall think fit, get in and receive all the debts or sums of money, and all the other property hereby assign-ed or intended so to be, and upon this further trust that the said *Samuel Thomas, &c.* their heirs executors or administrators, do and shall pay and divide all the clear moneys which shall be raised or received, from the aforesaid lands and personal estate, debts or sums of money and premises hereby men-tioned, and intended to be assigned unto and amongst all and every one of the creditors of the said *David Wilson,* towards the satisfaction of their several and respective debts proportionably, and according to a dollar rate of the said debts so far as the produce of the assigned property will extend, to satisfy said debts after a deduction of the charges and expenses of executing this trust and a reasonable allow-ance to the said *Samuel Thomas, &c.* for their care and trouble in and about the premises, and upon this further trust that when the creditors of the said *David Wilson,* shall have received the whole of their respective debts to them due and owing, and after deduction and payment of all costs, charges, expenses and commissions aforesaid, the said *Samuel Tho-mas, &c.* shall and will pay over to the said *David Wilson,*

his executors, administrators, or assigns, the overplus or remainder arising from the said assigned premises.

In testimony whereof I hereto set my hand and seal the day and year first herein written.    ˙ D. Wilson, [l. s.]

Signed, sealed and delivered in the presence of *John Denning, Manlove Hays* and *S. Boyd.*"

" Newcastle county, State of Delaware, *ss.* Be it remembered that on the twenty-eighth day of July, in the year of our Lord one thousand eight hundred and twenty-eight, came before me *Kensey Johns,* chief justice of the Supreme court of the *State of Delaware,* the within named *David- Wilson,* and acknowledged the within written indenture to be his act and deed.    In testimony whereof I have hereto set my hand the day and year above written.    Kensey Johns, C. J."

" *Newcastle* county, *ss.* I do certify that the above and aforegoing instrument of writing, is a true copy from the original thereof, now remaining of record in the rolls office in and for the county aforesaid.

In testimony whereof I hereto set my hand and affixed the seal of said office this first day of August, A. D. 1828.

[l. s.]                Matthew Kean, *Recorder.*"

Which it is admitted is good to convey real and personal estate according to the laws of *Delaware.* That the said *George Houston* was one of the creditors referred to in said deed, but that he never claimed any benefit under said deed in consequence of said debt, nor in any manner whatever assented thereto.

It is further agreed and admitted, that the said *David Wilson* had contracted to sell to a certain *George Ford,* in his life-time, the lands and tenements mentioned as having been attached in the hands of *Alfred C. Nowland,* one of the garnishees ; had put him in the possession thereof, and given to him a bond of conveyance for the same, to be conveyed on the payment of the whole of the purchase money, a large part of which is still due ; it is further admitted that the debts and credits returned by the sheriff as being attached in the hands

of the other garnishees, were due and owing by said garnishees to the said *David Wilson*, at the time of the execution of said deed.

At October Term, 1833, the county court gave judgment on the case stated for the garnishees, and the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, and SPENCE, Judges.

GROOME for the appellant.

From the statement of facts and other proceedings in this cause, it appears, that the attachment was issued on the 4th day of August, 1828, and the deed of trust executed in *Delaware*, on the 28th day of July previously. Does this deed under the circumstances of this case in *Delaware*, and never acknowledged or recorded agreeably to the laws of *Maryland*, defeat the operations of the attachment from Cecil county court, which was levied on the lands and credits of the debtor within the *State of Maryland*?

It will not be denied, that it is legal for a debtor, in this *State* in failing circumstances, to convey and assign all his property to trustees for the general benefit of creditors, 6 *Gill and Johnson*, 205. But then such deed, is in all respects to be tested by the laws and rules which decide the validity of all other deeds embracing the same species of property. The deed in this case, was executed, acknowledged and recorded in conformity with the laws of *Delaware*, as is admitted; but it was never authenticated and recorded, as required by the laws of *Maryland*; of the plaintiff's knowledge of its existence there is furnished no evidence, either constructively, by the recording of it, in this *State*, nor actually, by information in relation to the subject. On account of not being recorded within the time limited by our law, it clearly did not convey any interest in the lands in this *State*, but the legal title therein, still continues in the grantor or debtor, and of course remained subject to his debts, and to all those remedies which the law gives for the recovery and collection of debts.

At the time then of issuing the attachment, (and even now,) the legal title in the land remained in *D. Wilson*, and was itself a fund, on which the attachment might be laid, and the debt levied. For although, there existed between *D. Wilson* and *George Ford*, a bond for the conveyance of the said land, on the payment of a certain sum of money, yet that bond of itself, did not divest the legal title of *D. Wilson* to the land ; nor ever entitle the purchaser to demand the transfer of the legal title, until the whole of the purchase money was paid or tendered, which had not been done in this case, for it is admitted, that a large part was still due at the time of the attachment. So that there remained in *Wilson* an interest in the land, which was rightfully subject to his debts and rightfully attached. And so great was his interest therein, that a court of Chancery would, (on his application, and on a failure of the purchaser to comply with his payments in conformity with the terms of the contract of conveyance, and the decree of the court,) have cancelled all the interest of the purchaser in it, and placed the possession back into the hands of *Wilson*. To transfer then, this interest of *Wilson* in the land legally, even to the purchaser under the contract, it would have been necessary for him to execute a deed, and have it recorded in all respects conformably to the laws of *Maryland*. To transfer his interest therefore, to any other persons, it would be equally necessary that the deed of conveyance should comply with all the forms required by our law—a conformity with these laws has not been observed in this case. The due registration of a deed affecting lands, has been made essential to its very validity by our acts of assembly, for they declare, that otherwise it shall not pass any estate therein, &c. Acts of assembly, 1715, ch. 47, sec. 8—1766, ch. 14, sec. 1—1807, ch. 154, sec. 3.

If then *David Wilson* had any interest in the land attached, it clearly has not passed from him by reason of the said deed, and that he had an interest is above shown. And not only had he an interest but that interest still exists as is further shown by the fact, that to perfect the title of the purchaser

(*George Ford*) it is still necessary that he should derive it by deed from *D. Wilson* himself, or if dead from his heirs at law. If then *David Wilson* had an interest in the land, and that interest was not legally transferred by him at the time of suing out the attachment, the attachment was rightfully laid on the land, and is entitled to be satisfied (so far as that interest is sufficient for the purpose) out of the land. For the reasons already stated it cannot be contended, that the contract of sale converted the interest of *Wilson* into a mere personal debt. But if it did, then the deed cannot be construed as effecting an assignment of this debt, because it has not conferred (as already shown) on the assignees any power to fulfil the assignor's covenants with the purchaser, by conveying the land on payment, nor of course any power to coerce payment against the consent of the purchaser, who would have a right to demand the perfection of this title when required to pay the money. Besides if it be a debt, then as to it, and the other debts which are attached a train of reasoning similar to that already pursued may be applied. The law throws about the transfer of personal property, certain guards to protect innocent men from fraud and imposition, which have not been observed in this case. Where the actual possession of that species of property does not accompany the act of sale or transfer, there it is made necessary to execute a deed in writing, to be recorded within a limited time. The act of Assembly requires this form to be observed in regard to the transfer of all personal property, without distinction or exception. It is no quibble to insist, that a debt is equally within the purview of the statute, for although a debt be of no tangible form, that it may be delivered, yet the evidence of that debt is of such a nature as will admit of its specific delivery. And if the reason of the law be as stated, to prevent fraud and imposition, then the necessity of requiring the delivery of the note, bond or other evidence of the debt at the time of transfer, or of executing and recording a deed of its transfer, is as great as if the subject of transfer was a horse, or cattle. The possession of a

note or bond in the hands of the party to whom it was origi-
nally given and due, would surely justify the debtor in paying
it to such party, notwithstanding the existence of a transfer
unknown to the debtor.   Now in the present case, there was
no transfer of these debts, either by a specific delivery of the
bond, &c. or by any deed executed and recorded in confor-
mity with our laws, and no evidence that the transfer set up
was known to the attaching creditor or to the debtor.   It
would operate as a serious evil to the community, if such
secret and informal transfers of debts or other personal pro-
perty were permitted or tolerated by law, because as soon as
a creditor should commence any proceeding, to apply to him-
self the debts due to his debtor, either residing here or else-
where, although he could shew that at the time of instituting
the suit the evidence of the debt was held by his debtor him-
self, it would be competent for the debtor to defeat the suit,
by the production of a distinct paper transferring his interest
in the claim, secretly executed and antedated.   Nor can it
be said, that no such risk exists or can be apprehended in-
asmuch, as the execution of the deed on the day mentioned
is proved by the corresponding date of the acknowledgments,
for an acknowledgment in another *State*, not duly authenti-
cated, is no evidence under our laws to establish a fact that
it contains or alleges.   So far I have argued this case on the
hypothesis, that the deed embraced the lands and debts
attached in this *State*.   But it is a matter of great doubt
whether such was ever the intention of the grantor or as-
signor.   The recital of the deed set forth, that the lands of
which *D. Wilson*, is seized, and of course the lands which
were intended to be conveyed, are afterwards particularly
described.   The deed then proceeds to describe with great
accuracy, and particularly all the lands of the grantor in the
*State of Delaware*, and at the end of the description thereof
are added these words, and " also all other real estate of
which the said *David Wilson*, may be seized or possessed of,
or in any manner entitled to."   No mention is made of any
of the lands designed to be conveyed as lying elsewhere than

in *Delaware.* This fact taken in connection with the cir-
cumstance, that the whole execution and disposition of the
deed were made in conformity with the laws of *Delaware,*
merely, and without any regard to the demands of the acts of
Assembly of *Maryland,* in relation to the subject, goes very
far to create the presumption, if not to establish the conclu-
sion, that it never entered into the mind or meaning of the
grantor, that he was disposing of his property in *Maryland.*
There is no particular description of the lands in *Maryland,*
and no reference to them, unless included in the general
words above quoted. But even if the deed do by its phrase-
ology take in the lands in *Maryland,* still it is denied that
inasmuch as it has been executed in *Delaware,* for the pur-
pose of vesting in trustees, property for the benefit of credi-
tors, without the assent of the creditor in this case, it can
be regarded as valid and operative here to defeat this attach-
ment. To give it such effect, would be opposed by every
consideration of sound policy. It will be seen by reference
to the said deed, that all the trustees or grantees belong to,
and reside in *Newcastle county,* in the *State of Delaware,*
and consequently beyond the reach of any process from the
courts of *Maryland.* If they should refuse to execute the
trust, or in executing should abuse it, what remedy would
exist in this *State* against them? No discovery or execution
of the trust could be enforced by our courts, and even sup-
posing, that a special action at law could be maintained on
such a deed when executed here, no action either at law or in
equity, could under the circumstances of this case be sustain-
ed in *Maryland.* The creditors not being in possession of
the deed, nor the deed so authenticated as to make a copy of
it evidence in our courts, nor any person or fund against
whom, or which, process could be directed and served. The
deed then, so far as it purports to transfer property in trust
here, for the benefit of creditors cannot be construed to
have that effect, because there is no mode known to the law,
by which in this case, a creditor can be secured in the enjoy-
ment and application of the debtor's property in this *State,*

towards the liquidation and payment of his debt.    There is no redress in *Maryland* for him, nor can the courts of *Delaware* afford him relief, because their jurisdiction cannot be extended to property and funds here.    He is therefore without remedy, unless he can avail himself of the laws relating to attachments as has been done in this case.    These positions are sustained too, by the analogies of the law.    It has been repeatedly decided, that a commission of bankruptcy in *England*, and a delivery of property into the hands of the assignee for the benefit of creditors, do not secure the debtor's effects in this country, but they remain liable to attachment by creditors.    *Kirby*, 313.    *Taylor and others vs. Geary and others*, 6 *Binn.* 353.    *Milne vs. Morton*, 5 *Cranch*, 289, 302.    See also, *Douglass*, *R.* 170.    So in the case of *Ingraham vs. Geyer*, 13 *Mass.* 146, an assignment by an insolvent debtor in *Pennsylvania*, for certain creditors, was held under its circumstances to be void, as against a creditor in *Massachusetts*, and it was there stated by the court, that a creditor who had actually siezed the debt by attachment before it was paid over to the assignee, would be protected in his lien.    So in this *State*, the same principle has been decided, as in the case in Kirby, *Wallace et al, vs. Patterson et al*, 2 *Har. and McHenry*, 463, which is a case precisely analogous to the present case, except that the transfer was made under a commission of bankruptcy.    In that case it is stated, in the argument for which *Coke's B. L.* 370, is cited, that any creditor in *England*, might either prove his debt under the commission, or if the bankrupt has property beyond sea, might attach his debt in the foreign country.    I can conceive no reason why an assignment under a commission of bankruptcy elsewhere, should not operate to transfer property here, which does not with equal force apply to such cases as the present, where a deed is executed according to the laws of one *State*, and claiming to affect property lying in another, whose laws in relation to the execution of such deed have been wholly overlooked, and where neither the production of the deed, the appearance of the parties, nor the execution of the trust it creates, can be coerced.

PAGE, for the appellees, contended :

That the deed of trust was obligatory upon the appellant, notwithstanding the absence of his consent, so far as to prevent him from proceeding against the property by attachment, in the mode attempted in this case, the same property being a part of the property conveyed as aforesaid to the trustees.

For the purpose of maintaining the foregoing proposition, the appellee's counsel refers to the case of *Marbury and Brooks*, 7 *Wheaton*, 556. And the case of the *Bank of Maryland*, 6 *Gill and Johns*. 205, and again at June term, 1835, in which this court is understood to have declared the law to *be settled* upon this subject.

STEPHEN, Judge, delivered the opinion of the court.

The question to be decided in this case, arises upon a case stated, and must be determined according to the construction and legal efficacy of the deed referred to, by the litigating parties. By that deed, *Wilson* the absent debtor, contemplated a transfer of all his property of every description, to certain trustees therein mentioned, for the benefit of all his creditors. That such a deed is available in this *State*, as being founded upon a good and valuable consideration, has been solemnly settled by a very recent adjudication of this court, in the case of the *State of Maryland vs. the Bank of Maryland*, 6 *Gill and Johns*. 205. In that case the Chief Justice in delivering the opinion of the court, expresses himself in the following emphatic terms; "it has been more than once decided by this court, that a debtor in failing circumstances, may prefer one creditor to another, by a transfer of his property made in good faith, and if according to circumstances, one creditor may be preferred to another, it would be difficult to imagine an objection to the validity of a transfer by a debtor, of his whole estate to trustees, for the equal benefit of all his creditors. Equality is equity, and when a debtor makes a transfer of his property, for the fair purpose of equal distribution among his creditors, he does an

honest act, and discharges a moral duty, which none can
reasonably complain of, and to which, objection can seldom
be made, except by such as may seek to secure their own
claims at the expense of the other creditors;" so in *4th
Johns. C. Rep.* 529, *Chancellor Kent*, maintaining the same
doctrine, says; "it is settled by a series of cases referred to,
in *Hendricks vs. Robinson*, 2 *John. C. Rep.* 307, 308, and to
which may be added the case of *Pickstock vs. Lyster*, 3
*Maul and Selw.* 371, and *Brown vs. Minturn*, 2 *Gallison.*
557, that an insolvent debtor may at any time, before his
property becomes bound by any lien, assign it over to trus-.
tees for the benefit of all his creditors, by an act made *bona
fide*. The assignment is to be referred to an act of duty,
attached to his character of debtor to make the fund available,
for the whole body of the creditors." In the case last cited,
it was held, that the assignment was good against a subse-
quent attachment, if the creditors had assented to the assign-
ment prior to the attachment, and the inclination of the
learned judge seemed to be in favour of the validity of the
assignment, even without such intervening assent, and which
I apprehend is not indispensable. If the assignment was
directly to the creditors, their assent would be necessary to
give validity in law to the deed. But if the assignment as
in this case, be to trustees for their use, the legal estate
passes and vests in the trustees, and Chancery will compel
the execution of the trust, for the benefit of the creditors,
though they be not at the time assenting, and parties to the
conveyance. The case of *Marbury and Brooks*, reported in
*7th Wheaton*, 556, is also an authority to shew, that the
assent of the creditors is not necessary to legalize, and give
efficacy to the assignment. This court speaking of that case
in 6 *Gill and Johns.* 219, say, *Marbury vs. Brooks*, and
*Brooks vs. Marbury*, was a case of attachment, sued out by
*Brooks* a creditor, against the lands, tenements, goods, chat-
tels and credits of *Fitzhugh* an absconding debtor, and laid in
the hands of *Marbury*, who claimed and held the property
under a deed of assignment to him by *Fitzhugh*, of all his

estate, executed before the attachment was issued, for the particular benefit of certain preferred creditors, several banks in the *District of Columbia;* and the question was, whether the deed so given to *Marbury,* was valid and effectual to pass the property from *Fitzhugh* the debtor, to *Marbury* the trustee, who was not a creditor of *Fitzhugh;* and it was held that it was, and that it vested, *ab initio,* the legal estate in the trustee, although the banks for whose particular benefit it was made, had not expressed their assent to it, and were in fact, ignorant of its execution at the time it was given. It is true, the deed of *Wilson* to his trustee, did not operate to transfer his real estate in *Maryland,* it not being executed, acknowledged, and recorded according to our laws ; but the case stated, upon which the judgment of the court below was rendered, shews that the land upon which the attachment was laid in this case, had been previously sold by *Wilson,* to a certain *George Ford,* that he was in the possession of it, that *Wilson* had given him a bond, to convey the legal title on the payment of the purchase money, that a part had been paid, and the balance which was due, was payable in virtue of the assignment, not to *Wilson,* but to his trustees, for the benefit of his creditors. Under these circumstances, *Wilson* had no interest in the land attached, except the dry legal title, which he held in trust for *Ford,* or his legal representatives, and which he was bound to convey to them, so soon as the balance of the purchase money should be paid to his trustees, for the benefit of his creditors. Such an interest not being a beneficial one, we do not think a fit subject matter for the operation of an attachment, and that the opinion of the court below, was in that respect correct. We think that the judgment of the court below was also correct, so far as the same relates to the operation of the assignment upon the *choses in action,* attached in this case. Such assignment operated to transfer them to the trustee, at least in equity, and left as in the case of the land, nothing but a dry legal title in the assignor, which being scarcely any thing more than a mere *scintilla juris,* was not the subject of an attachment,

*Cranch,* 300, 1*st Atkins,* 162. Upon the whole, we think the judgment of the court below was correct, and ought to be affirmed.

JUDGMENT AFFIRMED.