( Decided June 2nd, 1858.)

# Thos. Wilson & Co., *vs.* Thos. J. Carson & Co., Garnishees of E. Webb, Maxcy & Co.

An order directing consignees *"when in funds from sales* of various shipments of hog product, to pay*"* certain named parties *"the sum of $10,000, should the balance coming to us"* (the consignors) *"amount to that sum,"* cannot defeat an attachment laid in the hands of the consignees, by creditors of the consignors, *before* the former had *accepted* the order, or in any way *assented* or *agreed* to, or *recognised* the appropriation of the fund to the specified purpose.

Where an order is drawn for the *whole* of a particular fund, it amounts to an *equitable assignment* of that fund, and, *after notice* to the drawee, it binds the fund in his hands.

But an order either on a general or particular fund, for *a part only*, is not an assignment of that part, nor does it give a *lien* thereon as against the drawee, until he *consents* to the appropriation by *accepting* the order, or an *obligation to accept* may be fairly implied from the custom of trade, or the course of business.

The testimony of two witnesses, (lawyers,) that they are *of opinion* a certain deed is, according to the laws of Kentucky, where it was executed, legal and sufficient to convey the property to the grantee, and that they know of no *statute* of that State affecting this *opinion*, is *sufficient proof* of the *foreign law*, and this being the only testimony on this point in the case, and the question being whether the deed should be admitted in evidence, the proof is *for the court*.

The recognition of the laws of another State in the administration of justice in this, is not a right, *stricti juris*, but depends entirely on *comity*, and in extending it, courts are always careful to see that the statutes or policy of their own States are not infringed, to the injury of their own citizens.

T. J. Wilson & Co., *vs.* Carson & Co., Garn. of Webb, Maxcy & Co.

The act of 1729, ch. 8, sec. 5, requiring conveyances of personal property, whereof the grantor remains in possession, to be recorded *within twenty days* in the county where the grantor *resides*, applies only to deeds made *in Maryland*, and not to those made in *another State.*

A deed of trust, for the benefit of creditors, executed in another State, in conformity with the laws thereof, though not executed, acknowledged or recorded in Maryland, transfers the *title* to *personal property in Maryland* so as to *defeat* an *attachment subsequently* sued out in this State by creditors of the grantor residing here.

Appeal from the Superior Court of Baltimore city.

*Attachment* on warrant issued out of the Superior Court of Baltimore city, on the 3rd of January 1854, at the instance of the appellants, citizens of Maryland, on a claim due them by *E. Webb, Maxcy & Co.*, citizens of Kentucky, for $4847.96, and, on the 4th of January 1854, laid in the hands of *T. J. Carson & Co.*, as garnishees, who appeared to the writ and pleaded *non assumpsit* and *nulla bona*, upon which issues were joined.

*Exception.* By the admissions and poof in the case, it appears that the plaintiffs were citizens of Maryland, that the garnishees, Thos. J. Carson, Jos. Carson and Saml. C. Edes constituted the firms of *T. J. Carson & Co.*, and *Carson & Edes*, the former doing business in Baltimore, and the latter in New York, and both firms being one concern; and that the defendants, Ezra Webb, Wm. Maxcy and Thos. G. Rowland constituted the firm of *E. Webb, Maxcy & Co.*, which did a general factorage, commission and brokerage business in Louisville, Kentucky, and all the members of this firm, together with Wm. Teeter and E. Lewis Stoll, composed the firm of *Teeter, Maxcy & Co.*, of Louisville, which pursued exclusively a slaughtering and pork-packing business, the *former* being the financial and shipping agents of the *latter* firm; that these two last mentioned firms failed in business, and, on the 31*st of December* 1853, all the members of both united in a deed of trust or assignment to Wm. Riddle, of Louisville, the provisions of which are as follows:

It conveys to the trustee a large amount of real estate in Kentucky, belonging to said Wm. Maxcy, individually, and his household and kitchen furniture; a considerable amount

of real estate in Kentucky, belonging to said T. G. Rowland, individually, also certain slaves belonging to him, and his household and kitchen furniture; all the said Wm. Teeter's estate, real, personal and mixed; all the household and kitchen furniture of said E. Webb; certain real estate in Kentucky belonging to said E. Lewis Stoll, individually, and his interest in a certain tannery in Louisville; all the warehouse furniture of said *E. Webb, Maxcy & Co.,* and the lease of the warehouse; all the accounts, debts, rights, *choses in action,* and personal property set out particularly in paper M., No. 1, made part of the deed; one hundred and sixty hogsheads of tobacco; all their interest in two hundred and seventy-two boxes of manufactured tobacco, shipped by *E. Webb, Maxcy & Co.,* to Penn & Mitchell, of Baltimore, and for which the latter gave their acceptances; all the shipments of produce mentioned more particularly in said paper M., No. 1, and on the faith of which the acceptances of the consignees were given; all said Rowland's interest in the Farmers tobacco warehouse; and certain plank belonging to *Teeter, Maxcy & Co.; in trust* to sell and convey all said property, collect all the debts and *choses in action,* and out of the proceeds pay, *first,* the expenses of executing the trust, and for that purpose, the trustee may employ any agent or agents, and pay him or them a reasonable compensation; and *secondly,* to pay off the debts mentioned in a *schedule* also made part of the deed; and should there not be sufficient to pay all, then to pay them *pro rata,* with power to the trustee to sell and dispose of the effects so conveyed as he may deem proper, and most to the interest of the *cestui que trusts;* and also with full power and authority to compromise and compound, as he may think proper, any claim hereby conveyed. (This schedule of liabilities includes the debt for which the plaintiffs have attached, and an item of $30,862.15, specified as due "Wm. Teeter, being balance due on account of purchase of hogs on account of the house.") The deed then declares that the transfer of the claim on *Carson & Edes,* and *T. J. Carson & Co.,* and Lees & Walter, is subject to drafts and assignments theretofore given by the grantors—1st, to Gill, Anderson & Co.; 2nd, to Walters &

Fox; 3rd, to Parmelee & Bro.; 4th, to Smith, Clark & Logan; and 5th, to B. & L. Leavell, and Conn & Ramsay. It then directs the trustees to defend certain attachments laid on a portion of the property conveyed, and then pending in the Louisville Chancery Court, and which the grantors deem to have been improperly issued, and if the plaintiffs therein should be successful, the trustee is to pay the claims attached for, and if unsuccessful, then said debts are to be paid *pro rata* with the others. The deed then explains that the item of $30,862.15, rendered in the schedule of liabilities, is intended to cover claims and notes created by Wm. Teeter, for purchases for said firm, in and for some of which he has executed the notes of *Teeter, Maxcy & Co.*, which debts so created are designed to be secured by this deed, and the trustee is to pay the same with the other debts specified in the schedule.

The deed is executed by the grantors in their individual names, and by the two firms in their co-partnership names, and also by Riddle, the assignee, as an acceptance of the trust, and, on the same day, was recorded in Kentuckey, but was never stamped nor recorded in Maryland, and no affidavit as to the consideration was made by the grantee.

The claim of the plaintiffs, on which the attachment issued, was admitted to be correct, and it was further admitted, that neither of the defendants was, at the time the attachment issued, a citizen of Maryland, nor did either of them then reside therein; that Jos. Carson, one of the garnishees, was in Madison, Indiana, at the end of the month of December 1853; that at the time the attachment issued and was laid, there was a large amount of produce, consisting of pork, lard, bacon, and other provisions, in the hands of the garnishees, *T. J. Carson & Co.*, in Baltimore, which had been consigned to them, for sale, by *E. Webb, Maxcy & Co.*, of Louisville, and that afterwards, and before pleas filed, there accrued from the sale of said property, in the hands of the garnishees, over and above all advances made by said firms of *T. J. Carson & Co.*, and *Carson & Edes*, the sum of $12,805; that the property consigned as aforesaid, was parcel of that mentioned in paper M., No. 1, attached to the above deed; and that the property

8    v. 12.

mentioned in said deed is inadequate to pay the creditors named in the schedule of liabilities thereto annexed.

The assignments of the proceeds of the property in the hands of *T. J. Carson & Co.*, and *Carson & Edes*, referred to in the deed, were made on the *30th of December* 1853, the day before the deed was executed, and consist of six drafts or orders, two of which are signed by *E. Webb, Maxcy & Co.*, and the others by *Teeter, Maxcy & Co.* They are all directed to *T. J. Carson & Co.*, and *Carson & Edes*, with the exception of one, in favor of *Gill,* Anderson & Co., which is directed to *Carson & Bro.*, and, in reference to this, two witnesses, examined under the commission, swear that *notice* thereof was given to a man they call Joseph Carson, whose name the witnesses believe is T. J. Carson, at Madison, Indiana, on the 30th of December 1853. It was, however, admitted there was no such firm as *Carson & Bro.* The terms of these several orders are sufficiently stated in the opinion of this court, and their amount largely exceeds the funds now in the hands of the garnishees.

In reference to the validity of the deed of trust or assignment, according to the laws of Kentucky, the testimony of two witnesses was taken, under a commission sent to Louisville. Wm. S. Bodley, one of them, testifies that he is acquainted with the laws of Kentucky, and has obtained that knowledge by study and practice there and in Mississippi, since the year 1825, and by being a Circuit Judge in Mississippi a short time; that he has examined with care a copy of the deed in question, shown him, and the clauses and provisions in said deed appear to be, according to the law of Kentucky, legal and valid, and sufficient to convey to the grantee therein the property mentioned by the deed, and intended to be conveyed; that he knows of no statute of Kentucky affecting the correctness of the above opinion, or bearing upon that point, and that the common, customary or unwritten law of Kentucky, in relation thereto, is above stated correctly, as he believes. Hamilton Pope, the other witness, says, I am acquainted with the laws of Kentucky, being a practicing attorney; I have examined the copy of the deed in question, and am of opinion

that the clauses and provisions therein are, according to the laws of Kentucky, legal and sufficient to convey to the grantee the property set forth therein; I know of no statute of Kentucky affecting the correctness of the above opinion, or bearing on the point; I was one of the counsel who advised and prepared the original deed.

Several letters were also read in evidence, by consent, for any purpose for which they are admissible, viz: 1st, one from Riddle, the assignee, dated Louisville, 31st of December 1853, directed to *Carson & Edes*, New York, advising them that *E. Webb, Maxcy & Co.*, and *Teeter, Maxcy & Co.*, had that day assigned to him, for the benefit of their creditors, all their estate, real, personal and mixed, debts, &c., and directing them *(Carson & Edes)* to take notice thereof, and to hold all property committed to either of their firms as subject to said assignment, and saying that a lien is recognised for advances made by them on the property consigned; 2nd, the reply of *Carson & Edes* to the above, dated New York, January 6th, 1854, directed to Riddle, saying that his letter of the 31st ult. came to hand this morning, (January 6th, 1854,) and also informing him that an attachment was laid, two or three days ago, against *E. Webb, Maxcy & Co.*, at the suit of T. J. Wilson & Co., of Baltimore, of the legality of which they know nothing, and further stating that some orders of *E. Webb, Maxcy & Co.*, to other parties, have also been advised, which they shall not, of course, accept; 3rd, a letter from the plaintiffs, T. J. Wilson & Co., dated Baltimore, January 4th, 1854, to *E. Webb, Maxcy & Co.*, in which the writers say, "we were yesterday surprised by a dispatch from Messrs. Hutchins & Co., which stated you have refused to accept our drafts, and have made an assignment," and also stating that they had attached the funds in the hands of *Carson & Edes;* and 4th, a letter from *T. J. Carson & Co.*, showing that the sales of the property attached, except a small amount, were made by the garnishees, after the attachment was laid.

The plaintiffs asked ten instructions to the jury, in substance as follows:

1st. This prayer asserts, that the deed of assignment of the

31st of December 1851, is no bar to the plaintiffs' recovery against the garnishees, provided the jury find, from the evidence, that the plaintiffs never assented to it, and that Teeter and Stoll were members of the firm of *Teeter, Maxcy & Co.*, and not of that of *E. Webb, Maxcy & Co.*, and that the property and debts mentioned in the deed belonged, in part, to the firm of *E. Webb, Maxcy & Co.*, and that for a large amount of the debts mentioned in the schedule annexed to the deed, the firm of *E. Webb, Maxcy & Co.*, was not, in any manner, liable, and that William Teeter, mentioned in said schedule, is one of the grantors in the deed, and that the firm of *E. Webb, Maxcy & Co.*, were, at the date of the deed, in embarrassed circumstances, and unable to pay their debts in full, and that the provision made by the deed was, and is, inadequate for such payment, and that the deed was not stamped, and not acknowledged, and not recorded in any office in Maryland, in which deeds and bills of sale can be recorded, within twenty days after its date, and that no affidavit was made that the consideration set forth in the deed was true and *bona fide*, as therein set forth, and that no bond was ever given by Riddle, the trustee, or by any one else, conditioned for the faithful performance of the trust, and that no other person was ever appointed trustee in place of said Riddle; and that at the date of the deed, the property attached by the plaintiffs existed specifically and unsold in the hands of the garnishees in Baltimore, as the property of the defendants, except as to the amount mentioned in the letter of the garnishees, read in evidence by consent, and that the proceeds of any sales made prior to the laying of the attachment, were applied to the advances made by the garnishees, and that the sum of $12,865, admitted to be in the hands of the garnishees, accrued entirely from sales made after the laying of the attachment, and that the garnishees had no notice of the existence of the deed until after the laying of this attachment; and that the plaintiffs were, and the defendants were not, at the time the attachment issued, citizens of Maryland, residing therein.

2nd. This prayer asserts that the paper marked No. 2, (which is one of the drafts or assignments in favor of Walters,

mentioned in the deed, as subject to which the claim on the garnishees was transferred, and which is signed by *E. Webb, Maxcy & Co.*, and directs the garnishees to pay, out of the balance of the proceeds of certain specified shipments of hog product, when sold, after deducting advances of $68,422.85, admitted to have been received from the garnishees, to Walters the sum of $6853, the same being due him by *Teeter, Maxcy & Co.*,) is not competent evidence to sustain the plea of *nulla bona* as to such part of the several articles therein specified, as remained in the hands of the garnishees, unsold at the time of laying the attachment, provided the jury find, from the evidence, that any part of said articles were, at the date of said paper, and at the time of laying the attachment, and at the time when the garnishees first received notice of the existence of the paper, in the hands of the garnishees, and that the advances of $68,422.50, therein mentioned, had not, at any of said periods, been paid or satisfied in whole or in part, and that no means had been provided in any manner for payment or satisfaction thereof, except said shipments, and that the debt mentioned in said paper was the debt of *Teeter, Maxcy & Co.*, and not that of *E. Webb, Maxcy & Co.*, and that Teeter and Stoll were two of the members of the former, and were not members of the latter firm, and that said paper was never accepted by the garnishees, and was not presented to, or its contents made known to them, or either of them, before or at the time this attachment was laid.

3rd. This prayer asserts that the paper marked No. 3, (which is the assignment or draft in favor of Parmelee & Bro., referred to in the deed, and also set out in the opinion of this court,) is not competent evidence to sustain the plea of *nulla bona* as to such parts of the shipments therein referred to as remained in the hands of the garnishees, unsold at the time of laying the attachment, provided the jury find, from the evidence, that any part of said shipments were in the hands of the garnishees, in the city of Baltimore, at the date of said paper, and at the time of laying this attachment, and at the time the garnishees first had notice of the paper, and that the garnishees never accepted said paper, or assented to the direction therein

contained, and were not notified of its existence or contents until after the laying of this attachment, and that the sum of $10,000, therein mentioned, was not due by the defendants in this suit.

4th. That the following portion of the evidence of *Wm. S. Bodley*, viz: "the clauses and provisions in said deed appear to be, according to the law of Kentucky, legal and valid, and sufficient to convey to the grantee therein the property by said deed mentioned to be conveyed," is not legal and competent evidence to go to the jury.

5th. That so much of the evidence of said Bodley as is specified in the preceding prayer, is not sufficient evidence of what were the laws of Kentucky, as applicable to said deed.

6th. That the burden of proof is on the garnishees to prove, as facts, what are the laws of Kentucky, applicable to said deed, if they mean to contend that those laws, as applicable thereto, are other or different from the laws of Maryland.

7th. That said deed was not, and is not, a good and valid assignment or transfer of property which was in the hands of the garnishees at the time of laying this attachment, and that in the absence of proof that the laws of Kentucky, as applicable to it, are other or different from the laws of Maryland, it is to be assumed that the laws of Kentucky, as applicable thereto, are the same as the laws of Maryland.

8th. That the following portion of the evidence of Hamilton Pope, viz: "am of opinion that the clauses and provisions therein contained are, according to the laws of Kentucky, legal and sufficient to convey to the grantee the property set forth therein," is not competent and legal testimony to go to the jury.

9th. That so much of the testimony of said Pope as is recited in the preceding prayer, is not legal proof of what are the laws of Kentucky, applicable to said deed.

10th. That said deed was not, and is not, a good and valid assignment of so much of the property of the defendants, *E. Webb, Maxcy & Co.*, consigned by them to the garnishees, for sale, as remained unsold in the hands of the garnishees at the time of levying this attachment, and that said deed is not sufficient to sustain the issue joined on the plea of *nulla bona*.

The court (FRICK, J.,) granted the *second, third* and *sixth* prayers, but rejected all the others, and decided that the testimony of Bodley and Pope, in relation to the law of Kentucky, was for the court, and not the jury, and that said testimony was legal and competent evidence, and accordingly instructed the jury that the clauses and provisions in said deed of trust were, according to the law of Kentucky, legal and valid, and, by such law, sufficient to convey to the grantee therein named the property by said deed mentioned to be conveyed.

The plaintiffs excepted to the ruling rejecting their several prayers, which were refused, and to the granting of the instruction so given by the court. The verdict and judgment were in favor of the garnishees, and the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Wm. A. Talbott* and *Wm. Schley* for the appellants:

1st. The *orders* given on the 30th of December 1853, did not operate as a valid transfer of the property in the hands of the garnishees, so as to defeat the plaintiffs' attachment; for, 1st, only two of these orders were signed by *E. Webb, Maxcy & Co.*, the others were signed by *Teeter, Maxcy & Co.; all* of them are proved to have been for debts of the *latter firm,* and must be regarded as out of the case, for there is no evidence that the property in the hands of the garnishees belonged to *this* firm, and surely *E. Webb, Maxcy & Co.* could not, insolvent as they were, devote their money to pay *Teeter, Maxcy & Co's* debts; 2nd, but again, these orders are not an assignment of the *whole* fund, but only *orders* for a *part* of it, and therefore gave the parties holding them no *lien* on the fund until *assented* to by the consignees. In such cases the consignee must consent to the appropriation by an *acceptance* of the orders, or do some act *recognizing* the appropriation of the property consigned to him to the particular purposes specified in the orders; for, until then, the property and its proceeds remain at the risk and on account of the remitter or owner.

5 *Wheat.*, 286, *Mandeville vs. Welch.*  5 *Pet.*, 601, *Tiernan, et al., vs. Jackson.*  10 *Md. Rep.*, 373, *Eichelberger & Erskine, vs. Murdock.*  14 *East.*, 582, *Williams vs. Everett.* 72 *Law Lib.*, 232.  There is no proof that the garnishees ever accepted, agreed to, or recognized the appropriations made by these orders, and these being thus out of the case, the only remaining defence is the deed of assignment to Riddle, and as to this we insist:

2nd. That the proof offered to support the deed as valid by the law of Kentucky, was not competent for such purpose, the witnesses, Pope and Bodley, giving merely their *opinions* as to its validity.  The laws of a foreign country are to be proved *as facts;* the statute law by the production of a duly certified copy of the statute, and the common law by proof of experts.  Now, when the statute is shown, the court *here* decides *the effect* of that law upon the case; so, if the common law is shown, *the court here* ought to decide as to *its* effect upon the case.  The *opinion* of experts cannot deprive the suitor of his right to the judgment of the court, and *opinion* as to the validity of a paper, is not proof of the common law, any more than opinion as to a limited custom would be proof of the custom.  Besides, if *opinion* given before the whole evidence is in, is to be proof, then, practically, all *other* evidence is shut out.  2 *H. & J.*, 229, *De Sobry vs. De Laistre.* 3 *G. & J.*, 242, *Trasher vs. Everhart.*  *Story's Conf. of Laws*, secs. 637, 642.  7 *Gill*, 377, *Gardner vs. Lewis.* These witnesses, moreover, do not say that, by the law of Kentucky, this deed is good as *against creditors,* but only that it is good against the *grantors,* and would pass the property to the grantee, whereas it was incumbent on the garnishees to prove, by *legal* evidence, that the deed was valid as against creditors, *non-assenting* as well as assenting.  (13 *Mass.*, 147, *Ingraham vs. Geyer.*  5 *Md. Rep.*, 44, *Cushwa vs. Cushwa.*)  In this respect the proof here differs widely from that given as to the law of South Carolina, in the case of *Black, et al., vs. Zacharie & Co.*, 3 *How.*, 487, 488.

3rd. That the property attached, being *in specie,* in the hands of the garnishees, in Maryland, at the time the attach-

ment was laid, and the garnishees having so continued in possession, their possession was the possession of the defendants, and could only be changed either by *actual* transfer to an assignee, or by deed executed and recorded according to the law of Maryland, or *actual notice to the garnishees.* If considered as a *chose in action,* the title of the assignee was merely *inchoate* until *actual notice* to the *garnishees,* and the property in their hands, over and above their advances *at the time of laying the attachment,* was the property of *E. Webb, Maxcy & Co.,* and the plea of *nulla bona* was not sustained by proof of the assignment without *actual notice* to the garnishees, *prior to the attachment.* 3 *Barn. & Cress.,* 423, *Bentall, et al., vs. Burn. Blackburn on Sale,* 223, 225, 230, in 57 *Law Lib. Cross on Lien,* 83, 84. 4 *Mees. & Wels.,* 791, *Bryans, et al., vs. Nix.* 77 *Eng. C. L. Rep.,* 743, *Watts & Wife, vs. Porter.* 3 *Russell,* 1, *Dearle vs. Hall.* 2 *Story's Eq.,* secs. 1042, 1043, 1047. 2 *Ross on Commercial Law,* 576, *Auld vs. Hall.* 3 *Day,* 376, *Woodbridge vs. Perkins.* 5 *Day,* 534, *Judah vs. Judd.* 16 *Verm.,* 579, *Whitney vs. Lynde.* 17 *Mass.,* 110, *Lanfear vs. Sumner.* 10 *Md. Rep.,* 379, *Eichelberger, et al., vs. Murdock.* There is no proof that these garnishees had *notice* of this deed of assignment prior to the attachment, but, on the contrary, the letter of *Carson & Edes,* of the 6th of January 1854, shows that they did not know of the assignment *till that day,* and, in this very letter, Riddle is informed that our attachments had been previously laid in their hands. But it is said, *we had notice* of this assignment prior to our attachment: we had, however, no notice of the terms of this particular deed. But suppose we had notice, how does that help the *title of Riddle,* the assignee? He must perfect *his title* by giving notice to the garnishees, and if we take the property before that is done, by legal process, our title must prevail, whether we knew of the assignment or not. At any rate, we never *assented* to the deed; *knowledge* is one thing, and *assent* another. 7 *Md. Rep.,* 296, *Glenn vs. Boston, &c., Glass Co.* Again, Riddle, the assignee, can only claim *under* the assignment; he cannot enlarge the power given him by *the deed,* and by that instru-

ment the property in the hands of these garnishees is assigned, subject to advances, and to the *orders* above referred to. These orders, though not valid as against us, are still *good as against* the *parties* to the deed, and as they far exceed the balance in the hands of the garnishees, *nothing* on this claim was, therefore, conveyed by the deed to the trustee.

4th. That the deed is void, according to the law of Maryland, as against the appellants; 1st, because it attempts to convey all the property of *E. Webb, Maxcy & Co.*, the debtors of the appellants, for debts not owing by *that firm*, and so to appropriate the partnership effects to the wrong of the partnership creditors. It confuses and blends together the property of *two firms*, between whom there is no *privity*. It may well be that *E. Webb, Maxcy & Co.* were solvent as to their *partnership debts*, and yet we, who are *their* creditors, and have attached *their* property, are met with a deed which takes this property from them, and distributes it to the creditors of *Teeter, Maxcy & Co.* This cannot be done, and the deed is, for this reason, void. 1 *H. & G.*, 96, *McCulloh vs. Dashiell*. 2 *Coll. on Part.*, sec. 822, *note*. A partnership creditor attaching the partnership funds, is preferred to an attachment of a separate creditor of one of the partners. 1 *Gallison*, 367, *Lyndon vs. Gorham, et al.* 9 *Greenleaf's Rep.*, 28, *Commercial Bank vs. Wilkins*. 6 *Mass.*, 242, *Pierce vs. Jackson*. 22 *Pick.*, 450, *Allen vs. Wells*. 2nd. Because it contains various provisions which are denounced by the law of Maryland, as fraudulent *per se*, and others which were evidence to the jury, to show fraud *in fact*. It does not purport, on its face, to convey *all* the property of the firms, or of the individual partners; it authorizes the trustee to employ *agents*, and to *compound* claims as he may think fit, and *reserves* to *one* of the *grantors* a large amount; it has no stamp, no affidavit as to the consideration, and was never acknowledged nor recorded in Maryland, as required by the *act of* 1729, *ch.* 8, sec. 5.

5th. That though the deed may be valid by the law of Kentucky, and, by comity, might be held valid to pass the property attached, in the absence of express legislation here, yet, being opposed to *the policy* of the law of this State, and,

as already shown, in violation of express statutes, it cannot avail against this attachment. The plaintiffs being citizens of Maryland, and the property attached being in Maryland, belonging to non-resident debtors, the courts here will not send them abroad to another jurisdiction for dividends, when they have the means of payment at home. 13 *Mass.*, 146, *Ingraham vs. Geyer.* 17 *Mass.*, 110, *Lanfear vs. Sumner.* 15 *Pick.*, 11, *Fall River Iron Works Co., vs. Croade.* 5 *Greenleaf's Rep.*, 245, *Fox vs. Adams, et al.* 23 *Verm.*, 279, *Skiff vs. Solace.* 14 *Martin*, 93, in 2 *Cond. Louisiana Rep.*, 606, *Olivier vs. Townes.*

For these reasons it is insisted that the several rulings of the court below, excepted to, were erroneous, and the judgment should be reversed, and, as their claim is admitted to be correct, this court will enter judgment in favor of the appellants, without awarding a *procedendo.*

*Charles H. Wyatt* and *Geo. Wm. Brown* for the appellees:

1st. The orders of the 30th of December, were sufficient assignments of the fund in the hands of the garnishees. One of them, at least, was shown to Joseph Carson, one of the garnishees, on the day of its date, and they had, therefore, *notice* thereof *before* the attachment. The firm of *E. Webb, Maxcy & Co.*, were partners of *Teeter, Maxcy & Co.*, and liable for all the debts of the latter firm, and the orders were, therefore, properly given, signed by either firm. All these orders are expressly ratified by the deed of trust, which is signed by all the members of both firms, and this ratification is valid, even if the deed itself, for any reason, is not a valid assignment of the property which it professes to convey. In support of the position that these orders were valid and effectual assignments of this fund, so as to defeat the attachment, we refer to 2 *Story's Eq.*, sec. 1047; 72 *Law Lib.*, 229; 16 *Pet.*, 106, *Tompkins vs. Wheeler;* 8 *Wheat.*, 268, *Spring vs. South Carolina Ins. Co.;* 7 *Pet.*, 608, *Brashear vs. West, et al.;* 26 *Maine*, 448, *Porter vs. Ballard;* 20 *Verm.*, 25, *Blin vs. Pierce;* 3 *Barb.*, 262, *Hoyt vs. Story;* 8 *Humph.*, 654, *Johnson vs. Irby;* 4 *Md. Rep.*, 316, *Crane vs. Gough.*

But if these orders should not be held valid as against this attachment, we then rely upon the *deed of trust* or assignment of the 31st of December 1851, as a conclusive bar to it, and insist:

2nd. That the deed was valid, according to Maryland law. The partners of *E. Webb, Maxcy & Co.*, had a right to unite with the partners of *Teeter, Maxcy & Co.*, to pay the debts of both concerns, because the partners of the former were liable for all the debts of the latter firm, being partners thereof. There is no rule of law which prevents a debtor, in failing circumstances, from consolidating his property, individual and partnership, into a common fund, for the purpose of paying a certain class of debts. This is all *E. Webb, Maxcy & Co.* did. It does not appear that there were any individual debts due by any of the partners. If, in this way, they gave to the creditors of either firm a larger dividend than could have been derived from the assets of the particular firm, this is not an improper preference, but one which the law allows. But it does not appear that any such preferences were created by this deed. This deed, being thus valid if executed only by the partners of *E. Webb, Maxcy & Co.*, is certainly not made void by the fact that the other two partners of *Teeter, Maxcy & Co.* join in the conveyance, and throw their property into the common fund. If the appellants were creditors of *Teeter, Maxcy & Co.*, they might, with some appearance of reason, complain that *that* firm had united in a conveyance for the payment of the debts of both firms, because all the partners of *that* firm were not partners of the other. But they are creditors of *E. Webb, Maxcy & Co.*, and the deed secures none but debts for which that firm, in its partnership capacity, or all its members, as partners of *Teeter, Maxcy & Co.*, were responsible, and certainly this court cannot determine that such a deed was fraudulent as against such creditors. There is no *reservation* in it in favor of the *grantors*. It is true, Teeter's name appears as one of the creditors, but the deed itself explains this item, and shows that it was to pay the *debts* of the firm, created by Teeter, and not to *reserve* any of the property conveyed to either of the grantors. So far, therefore, as these

objections are concerned, the deed would be valid if executed in Maryland, and by persons residing therein. 3 *Md. Rep.*, 11, *Green & Trammell, vs. Trieber. Ibid.*, 53, *Sangston vs. Gaither.* The objections, that the deed is not stamped, and not acknowledged and recorded in Maryland, within twenty days, according to the act of 1729, ch. 8, and that there is no affidavit as to its consideration, do not apply to a deed made in Kentucky, between parties there resident, and especially to a case where possession of the property conveyed was not sustained by the grantors. 1 *Md. Rep.*, 524, *Bryan vs. Hawthorne. Ibid.*, 474, *Waters vs. Dashiell.* But if Maryland law would condemn this deed, we then insist:

3rd. That the deed is fully and satisfactorily proved to be valid, according to the law of Kentucky. The statute law of a foreign State is to be proved by an exemplified copy of the law, and the customary or unwritten law, by *witnesses* who are *acquainted* with the law. This we have done by the two witnesses, Bodley and Pope, experienced practitioners of the law in that State, and who say they have examined the deed, and, in *their opinion*, it is valid. In no other way could *experts* testify. This evidence was also for the *court* and *not the jury*, in the absence of any *contradictory proof*, or proof that our witnesses were not entitled to credit. To sustain this position, that the law of Kentucky was properly proved, and that in this case the proof was for the *court*, and not the *jury*, we refer to 7 *Gill*, 377, *Gardner vs. Lewis;* 3 *G. & J.*, 243, *Trasher vs. Everhart;* 2 *H. & J.*, 219, *De Sobry vs. De Laistre;* 1 *Greenlf on Ev.*, secs. 440, 486 to 488; *Story's Conflict of Laws*, secs. 637, 638, 642; 16 *Eng. C. L. Rep.*, 426, *Lacon vs. Higgins;* 61 *Eng. C. L. Rep.*, 268, *Cocks vs. Purday;* 6 *Foster*, 152, *Pickard vs. Bailey;* 12 *Verm.*, 396, *State vs. Rood;* 8 *Robinson*, 414, *United States vs. Bank of U. S.;* 55 *Eng. C. L. Rep.*, 208, *Baron De Bode's Case.*

4th. That being valid according to the law of Kentucky, and being made between persons there resident, the deed is valid to convey the personal property in Maryland, not being against the policy of our laws. We have already said, that it

is not necessary that the deed should be recorded in Maryland within twenty days, according to the act of 1728, ch. 8, for it is very evident that that act only applies, and was only intended to apply, to deeds and bills of sale executed in Maryland, by persons residing therein; it does not pretend to invalidate a deed made in another State, between persons there resident, conveying, among other things, personal property in Maryland. This question seems to be conclusively settled by the case of *Houston vs. Nowland, 7 G. & J.,* 480, where it was decided, that a deed executed in Delaware, in conformity with the laws of that State, though not valid to convey *real estate* in Maryland, without being executed, acknowledged and recorded, according to our laws, was yet effectual to convey personal property belonging to the grantor, including *choses in action,* in Maryland. The cases of *Trasher vs. Everhart,* and *Gardner vs. Lewis,* already referred to, also decide that though the rule of comity is overruled by *positive law,* yet, in the absence of such positive law, it is a universal principle governing the judicial tribunals of all civilized countries, that the *lex loci contractus* controls the nature, construction, and *validity* of the contract. On this point, see, also, 18 *Penn. State Rep.,* 185, *Law vs. Mills;* 6 *Binney,* 361, *Milne vs. Moreton;* 4 *Johns. Ch. Rep.,* 469, 487, *Holmes vs. Remsen;* 5 *Mason,* 174, *Bholen, et al., vs. Cleveland, et al.;* 2 *Bailey,* 163, *Greene vs. Mowry;* 8 *Robinson,* 262, *United States vs. Bank of U. S.;* 2 *Wallace, Jr.,* 131, *Caskie vs. Webster;* 3 *How.,* 514, *Black vs. Zacharie & Co.; Story's Conf. of Laws, secs.* 383, 384; all of which decide that personal property has no locality, but follows the *situs* of the *owner,* and that the law of the owner's domicil is to determine the validity of the transfer, or alienation thereof, unless there is some positive or customary law of the county, *where it is found,* to the contrary, and that a *general voluntary* assignment, valid by the laws of one State, though assumed to be void if it had been made in another, will carry property in that other against an attaching creditor there, and especially in a case where the *attaching creditors had notice,* as the appellants had here, of the assignment, at the time of their attachment.

5th. The position taken by the other side, that the proceeds of the property, which remained specifically in the hands of the garnishees at the date of the attachment, and was subsequently sold by them, to reimburse themselves for their advances, are not conveyed by the deed, is not sustained by the authorities or the facts. The property was sold by the garnishees, to repay the advances made by their agreement, and the proceeds of sale are transferred by the deed, precisely as the property itself would be. The appellants, as shown by their letter, had notice of the assignment *before* they laid their attachment, but no such notice was necessary, for the deed was immediately operative on being assented to by the trustee, and operated instantaneously as a transfer of the property, so as to defeat an attachment subsequently issued and laid. *Story's Conf. of Laws*, sec. 396. *Hill on Trustees*, 83, 84, 448. 72 *Law Lib.*, 229. 6 *Watts & Sergt.*, 329, *Read vs. Robinson*. 4 *Barr.*, 274, *Seal vs. Duffy*. 13 *Penn. State Rep.*, 589, *Klapp vs. Shirk*. 11 *Wend.*, 241, *Cunningham vs. Freeborn*. 2 *Paige*, 311, *Keyes vs. Brush*. 2 *Green's Ch. Rep.*, 84, *Scull vs. Reeves, et al*. *Burrill on Assignments*, 280, 282, 321.

For these reasons, without urging other specific objections to several of the prayers, it is submitted that the rulings excepted to are correct, and that the judgment should be affirmed.

Le Grand, C. J., delivered the opinion of this court.

This is an attachment on warrant, which, on the 3rd day of January 1854, issued out of the Superior Court of Baltimore city, at the suit of Thomas Wilson & Co., against the effects of Ezra Webb, Wm. Maxcy and Thomas G. Rowland, copartners, trading under the firm of E. Webb, Maxcy & Co., to recover a balance on account due 26th of November 1853, of $4847.96. On the 4th day of January 1854, the attachment was laid in the hands of the garnishees. The garnishees pleaded *non assumpsit* and *nulla bona*. All the members of the firm of *Webb, Maxcy & Co.*, together with William Teeter and E. Lewis Stoll, composed the firm of Teeter, Maxcy & Co., of Louisville, but neither Teeter nor E. Lewis Stoll were of the firm of E. Webb, Maxcy & Co. Both firms failed in

business, and, on the 31st day of December 1853, all the members of both firms united in a deed of trust to William Riddle, of Louisville, conveying a large amount of real estate in Kentucky, belonging to William Maxcy, individually, also his household and kitchen furniture; a considerable amount of real estate in Kentucky, belonging to T. G. Rowland, also certain personal property also belonging to him, individually; all the estate of Wm. Teeter, real, personal and mixed; certain property, real and personal, belonging to E. Lewis Stoll; the warehouse furniture of E. Webb, Maxcy & Co.; also certain accounts, debts, rights, *choses in action*, and personal property set out in paper marked M., No. 1, which is made part of the deed. This paper specifies the lard, pork, &c., which had been shipped to T. J. Carson & Co., of Baltimore. This conveyance was one in trust for the benefit of creditors, after paying certain expenses, according to the order specified in it. It provides that the transfer, in the deed, of the claim on Carson & Edes, and T. J. Carson & Co., and Lees & Walter, is subject to drafts and assignments by the grantors, previously given: 1st, to Gill, Anderson & Co.; 2nd, to Walters & Fox; 3rd, to Parmelee & Bro.; 4th, to Smith, Clark & Logan; and 5th, to B. & L. Leavell, and Conn & Ramsay.

It was admitted that neither of the defendants were citizens of Maryland at the time of the issuing of the attachment, nor were they at the date of the execution of the deed of trust of the 31st day of December 1853. It was also admitted, that at the time the attachment issued and was laid, there was a large amount of property, consisting of pork, lard, bacon, and other provisions, in the hands of Thomas J. Carson & Co., in Baltimore, which had been consigned to them for sale, by E. Webb, Maxcy & Co., of Louisville, the defendants; and that afterwards, and before the garnishees pleaded, there accrued from the sale of said property, over and above all advances, the amount of $12,805. The amount of assignments specifically made of this fund by the orders of date the 30th day of December 1853, and recognized in the deed of trust of the following day, is $28,714.42.

The correctness of the claim of the plaintiffs below is not

questioned. The questions we are called upon to determine, grow out of the orders of assignment, the deed of trust, the proof of the laws of Kentucky, and the levying of the attachment.

If the assignments given on the 30th of December, be valid, and bind to their amount any balance of the proceeds of the sales of the consignments to the garnishees, then it is clear the plaintiffs could not recover in this action; those assignments being largely beyond, in amount, any fund in the hands of the garnishees to meet them.

On the part of the appellants, it was insisted, that the property attached, being in specie, in the hands of the garnishees, in Maryland, at the time the attachment was laid, and the garnishees having so continued in possession, their possession was the possession of the defendants, and could only be changed either by actual transfer to an assignee, or by deed executed and recorded according to the laws of Maryland, or actual notice to the garnishee. That if considered as a *chose in action*, the title of the assignee was merely *inchoate* until actual notice to the garnishees, and the property in the hands of the garnishees, over their advances, at the time of laying the attachment, was the property of E. Webb, Maxcy & Co., and the plea of *nulla bona* was not sustained by proof of the assignment, without actual notice to the garnishees, prior to the attachment.

It appears from the letter of the plaintiffs, of date the 4th of January 1854, that they had, at that time, knowledge an assignment had been made by the defendants; it does not, however, appear they were acquainted with its precise character. The letter of Carson & Edes, of the 6th of January 1854, is the only evidence of the time when they first acquired knowledge of the fact that Mr. Riddle had been appointed assignee, and this letter shows that the attachment of the plaintiffs had been previously levied, of which it notifies Mr. Riddle. Although it is stated, in the admitted statement of facts in the record, that Joseph Carson, one of the garnishees, was in Madison, Indiana, at the end of the month of December, it nowhere appears he either had knowledge of the orders or of

v. 12.

the deed, or assented to either.    We cannot infer such knowledge or assent on his part.

The several orders given by the defendants, are, in language, substantially the same.    The one in favor of Messrs. Parmelee & Bro., is as follows:

"LOUISVILLE, December 30th, 1853.
*Messrs. T. J. Carson & Co.*

Gentlemen:—When in funds from sales of our various shipments, to your houses in New York and Baltimore, of hog product, please pay to Messrs. Parmelee & Bro. the sum of ten thousand dollars, should the balance that may be coming to us amount to that sum, and oblige," &c.

The case of *Tiernan, et al., vs. Jackson*, 5 *Pet.*, 580, was this: A shipment of tobacco was made at New Orleans, by the agent of the owner, consigned to a house in Baltimore, the shipment being for the account and risk of the owner, he being at the time indebted to the consignees for a balance of account. The owner of the shipment drew two bills on the consignees, and on the same day made an assignment on the back of a duplicate invoice of the tobacco, in the following words:   "I assign to James Jackson (the drawee of the bills) so much of the proceeds of the tobacco alluded to in the within invoice, as will amount to two thousand four hundred dollars, (the amount of the two bills,) to J. and L. six hundred dollars, &c., and Messrs. Tiernan & Sons (the consignees) will hold the net proceeds of the within invoice subject to the order of the persons above named, as directed above."   The court, after a most elaborate argument at the bar, by able counsel, held, that this assignment, by its terms, did not pass the legal title so as to authorize the assignees to sue in their own names, and fully endorsed the doctrine laid down in *Mandeville vs. Welch*, 5 *Wheat.*, 277, 286, where it was said, that in cases where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund; and, after notice to the drawee, it binds that fund in his hands.   But where the order is drawn either on a general or particular fund, for a part only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he consents to the appropriation

by an acceptance of the draft, or an obligation to accept may be fairly implied from the custom of trade, or the course of business, and that until the parties receiving a consignment or a remittance, under such circumstances, had done something recognizing the appropriation of it to the particular purposes specified, and the persons claiming had signified their acceptance of it, so as to create a privity between them, the property and its proceeds remained at the risk and on the account of the remitter or owner. The same doctrine was held by the Court of Appeals of this State, in the case of *Eichelberger & Erskine vs. Murdock*, 10 *Md. Rep.*, 396.

There is not a particle of proof, in the record, that the garnishees ever agreed to the appropriations made by the orders of assignment of the defendants.

We think, so far as proof of the law of Kentucky is concerned, the court below correctly stated the law. The case of *Gardner vs. Lewis*, 7 *Gill*, 377, and of *Trasher vs. Everhart*, 3 *G. & J.*, 242, are sufficient to show, in a case *like the present*, that the evidence of a foreign law is for the court. The two witnesses examined in regard to the matter, are, in our judgment, sufficiently explicit; they, in substance, say, (they being lawyers,) they are of opinion that the clauses and provisions in the deed of trust, according to the laws of Kentucky, are legal, and sufficient to convey to the grantee the property set forth therein, and that they know of no statute of Kentucky affecting that opinion, or bearing on the point. Opinion is belief, and nothing more; it is not absolute certainty, nor does the law require it to be so. If the reputation and professional standing of the two witnesses who were examined on this subject, were such as not to entitle them to credit, then, in that case, the fact should have been shown. They are wholly unimpeached, and, therefore, entitled to credit.

Although we deem the proof of the law of Kentucky sufficient, it does not therefore follow, necessarily, that we are to give it full effect in Maryland. The recognition of the laws of another State, in the administration of justice in this, is not a right *stricti juris;* it depends entirely on comity, and, in ex-

tending it, courts are always careful to see that the statutes of their own State are not infringed, to the injury of their own citizens.   The citations from *Justice Story's work on the Conflict of the Laws*, made in the opinion we have referred to, in 7 *Gill*, are sufficient to establish the proposition we have stated. The question, then, is, is the deed of trust of the 31st of December 1853, so violative, if at all, of the statutes or policy of this State, as to make it null and void in this case?   This inquiry is wholly aside of the doctrine recognized in some of the States, to wit, that a citizen of a State to whose forum application is had for the enforcement of the provisions of the deed, will not be compelled to resort to that of a State in which the deed was executed, but will be allowed the advantage of whatever lien his diligence may have given him on the property of his debtor, within the State of his own residence. This principle has been acted upon in Massachusetts, Vermont and Maine.

We know of no reason why the deed of the 31st of December 1853, should not operate in this case; the only one which has been suggested, is that arising out of the act of 1729, ch. 8, sec. 5.   It is supposed that, inasmuch as the deed was not recorded within twenty days from its date, it can have no influence prejudicial to claim of appellants.   In this view we do not concur.   That section provides, that "no goods or chattels, whereof the vendor, mortgagor or donor shall remain in possession, shall pass, alter or change, or any property thereof be transferred to any purchaser, mortgagee or donee, unless the same be in writing, and acknowledged before one provincial justice, or one justice of the county where such seller, mortgagor or donor shall reside, and be, within twenty days, recorded in the records of the same county."

The preamble to this section of the act, shows that its purpose was designed to guard against conveyances of goods *"secretly"* made for the benefit of children, or pretended creditors, whilst the donor or mortgagor was left in the enjoyment of the same.   It is clear, to our minds, it was not intended to apply to the case of a deed or bill of sale made in another State than Maryland.   It can only, by its terms, em-

T. J. Wilson & Co., *vs.* Carson & Co., Garn. of Webb, Maxcy & Co.

brace such instruments as are made within the limits of Maryland, because the recording which it requires is to be made in the county where the seller, donor or mortgagor *"resides."*

It is the universal law, that the *situs* of personal property is the domicil of the owner. In this case it was in Kentucky, and not in Maryland, and, therefore, to be determined by the law of the former, and not by that of the latter. To make the act of 1729 applicable to a case like the present, would, in fact, be to declare it incompetent to a person residing in England, or in any other distant country, to dispose of property in Maryland, for, in such situation of parties, it would be next to, if not quite, impossible, to record within the twenty days, and absolutely so within *the county*, for the foreign owner would not *"reside"* in any county within the State.

We have alluded to certain principles of law to guard against misapprehension hereafter, when a case shall arise to which they may be applicable, and to provide against the inference that this court is, in all instances, to recognize in the broadest sense the laws of other States, when properly adduced before it. But the case now under consideration, we regard as having been conclusively settled by the decision in the case of *Houston vs. Nowland*, 7 *G. & J.*, 480. In that case the debtor resided in the State of Delaware, having property in Maryland. He executed a deed in conformity to the laws of Delaware, for the benefit of his creditors. It was not executed, acknowledged and recorded, so as to convey real estate in Maryland. After the execution of this deed, a creditor of the grantor, residing in Maryland, sued out an attachment, and had it laid on certain lands and certain credits. The judgment below was rendered for the garnishees, and this court affirmed that judgment, on the ground that although the deed did not *per se* convey real estate in Maryland, because not executed, acknowledged and recorded, in conformity to its requirements, yet it did transfer the title to the credits, and, therefore, the attachment could not be sustained. The only question which the court made in regard to the efficacy of the deed, was, that it was not executed, &c., so as to pass real estate; in regard to the other property, there was no difficulty,

the instrument was deemed all sufficient. This case we hold to be decisive of the one now before us. In the argument, the court had presented to its consideration the case of *Ingraham vs. Geyer*, 13 *Mass.*, 146, wherein it was held, that a deed executed in Pennsylvania, conveying property for the benefit of creditors, was void in Massachusetts as against an attaching creditor. In the Massachusetts case, the doctrine of comity was disallowed, in aid of the deed as against the attaching creditor. We are, therefore, bound to consider that case as not endorsed as applicable to one like the present. In addition to the authority of the case of *Houston vs. Nowland*, we refer to that of *Black, et al., vs. Zacharie & Co.*, 3 *How.*, 483, which held, a transfer made in South Carolina, of stock in a corporation in Louisiana, to operate to defeat an attachment sued out in the latter State by the creditor of the person making the transfer, the attaching creditor having knowledge of the transfer at the time of suing out his attachment. It is manifest the plaintiffs had knowledge that an assignment had been made when they sued out their writ of attachment. Their letter, dated the 4th of January 1854, shows this.

Entertaining these views, we affirm the judgment below, regarding the law, as expounded by the Superior Court, as all that the plaintiffs were entitled to. The prayers which were rejected, were, for the reasons which we have assigned in treating of the principles governing the circumstances of this case, properly refused.

*Judgment affirmed.*