(Decided Nov. 12th, 1863.)

CECIL BANK *vs.* LLEWELLYN F. BARRY, Garnishee of JOHN HERR.

FOREIGN LAWS, PROOF AND CONSTRUCTION OF.—Although the *factum* of a foreign law is for the jury to find, upon the evidence; yet, it is the duty of the Court to construe it, especially if it be in writing, and to direct the jury as to its force and effect.

APPEAL from the Superior Court of Baltimore City :

*Attachment on warrant* issued by the appellant against John Herr, as a non-resident debtor. The attachment was issued on the 15th day of July 1857, and was laid on the same day in the hands of Lewellyn F. Barry, as garnishee. The garnishee having appeared pleaded *non assumpsit*, on

behalf of the defendant; and *nulla bona* in his own behalf. Issues were joined on replications to these pleas. Interrogatories were propounded by the plaintiff to the garnishee, and these were answered by him. The garnishee in his answer denies that he was indebted to the defendant in the attachment, or that he had in his hands or under his control, any property or effects of the said defendant; but claimed that Herr was indebted to him in the sum of $3860.64.

*Exception.* At the trial the plaintiff proved its claim against the defendant, and that Herr, at the time of the execution and delivery of both of said deeds, resided in York County, Pennsylvania, and that he owned real estate there worth from fifteen to eighteen thousand dollars; that there were no deeds of record in said county divesting said Herr of said property, and that after due search in the office at York, no deed had been found from him to said Barry. The plaintiff further proved that, although said Herr had no business office in York, yet in 1853 or 1854, he was the President of the York and Cumberland Rail Road; and, at that time, kept his place of business at the office of said railroad company. The plaintiff also gave evidence of collections made by the garnishee, and of money received for property sold by him as trustee under said deed. He also gave in evidence certain Acts of the State of Pennsylvania. Evidence was given that the defendant, John Herr, was frequently in Baltimore, transacted much business there, &c. The garnishee proved that on the 7th of July 1857, he paid away the funds distributed by the audit, offered in evidence. He also offered in evidence, subject to all objections to its admissibility and legal effect, his own report as trustee, to the Superior Court of Baltimore City, filed 9th June 1857, the audit thereupon made of the funds by him received as trustee, and mentioned in his said report, and which audit was finally ratified on the 6th day of July 1857. He also offered in evidence the receipts from the several persons, to

whom money was allowed by said audit, one of whom was the said Eli Lewis; but the Court refused to permit said report and proceedings to be considered as evidence in the cause.

The plaintiff thereupon submitted the following prayers:

*1st Prayer.* That if the jury shall find from the evidence, that John Herr was, at the time of the issuing of the attachment in this case, a non-resident of this State, and that he executed the deed to Llewellyn F. Barry, which has been offered in evidence; that at the time of the execution thereof, if they shall find he did execute the same, the said Herr was a resident of the county of York, in the State of Pennsylvania; that by the law of that State, deeds of the nature of that offered in evidence, from the said Herr to Barry, were at the execution thereof, void as to the preferences therein given; that at the execution thereof, he he had real estate in the said county of York, in the said State; and if they shall further find that the said Barry has assets of the said John Herr, which have come into his hands since the said deed, over and above the amount of his individul claim against the said Herr, and shall also find the indebtedness of the said Herr to the plaintiff as offered in evidence, that then the plaintiff is entitled to recover.

*2nd Prayer.* That if they shall find from the evidence as stated in the first prayer, and shall further find that the said John Herr resided in York County in the State of Pennsylvania; that the said real estate was at the time of the execution of the said deed, situate in York County of the said State; that by the laws of the said State, the said deed was void, unless recorded in the county where the said land was situated, within thirty days from the execution thereof, and that the same has not been recorded in the said county, that then the plaintiff is entitled to recover.

*3rd Prayer.* That if the jury shall believe from the evidence as stated in first and second prayers, and shall fur-

37      v. 20.

ther find that the said deed was not so executed as under the laws of Pennsylvania to pass real estate, that then the plaintiff is entitled to recover.

*4th Prayer.* That if they shall believe from the evidence as stated in the three preceding prayers, and also shall further find from the evidence that such a deed is void in the State of Pennsylvania as to preferences, and that the said Herr knowing himself to be in failing circumstances, came to the State of Maryland, for the purpose of executing the said deed, and giving the preferences therein provided for, then that the execution of the said deed was a fraud upon his creditors and void, and the plaintiff is entitled to recover.

*5th Prayer.* If the jury believe from the evidence the facts as stated in the foregoing prayers, and shall find the domicil of said John Herr to be as therein stated, and shall further find that by virtue of the deed given to said Barry, (if they shall find such deed,) he possessed himself of personal assets of said Herr, assigned to him thereby, that such transfer of personalty is to be governed by the laws of the domicil of said Herr; and if they shall find by said law that such assignments are null and void, as against creditors, then plaintiff is entitled to recover.

The Court below (MARTIN, J.) refused to grant any of the said prayers, and the plaintiff excepted. The verdict on the 1st issue was in favor of the plaintiff; and on the 2nd issue in favor of the garnishee. Judgment was rendered upon the verdict on the 2nd issue, in favor of the garnishee, and the plaintiff appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J., at considerable length. Only so much of the arguments as relate to the points actually decided by the Court are here given.

*Wm. S. Waters* and *Geo. H. Williams*, for the appellant, argued :

1st. That though the deed from Herr to Barry seems to

be good on its face, yet the appellant had the right to shew by matter *dehors* the deed, that it cannot operate in accordance with its terms, and though such deeds are tolerated in this State when they pass, and profess to pass all a grantor's property, yet if they do not so pass it, and creditors cannot obtain the advantages apparently held out by reason of the grantor's ownership of property in States where such deeds are prohibited, then said deed is void, and that before a grantor can obtain the benefit of such conveyances, exacting releases, he is bound to make his deed operate according to its terms. If by reason of his domicil elsewhere, or his ownership of property elsewhere, all his property cannot pass, then the defect is fatal and the deed void; and in that event if it does pass all the property, yet, if the same does not pass for distribution in exact accordance with its terms, it is inoperative and void; and also equally void if the property, contrary to the terms of the deed, is to be distributed according to two different modes, as to different parcels, to wit: one parcel by Pennsylvania statutes, and the residue by Maryland practice. *Harper vs. Hampton,* 1 *H. & J.*, 452, 622. *Haney vs. Marshall,* 9 *Md. Rep.*, 212.

2nd. In support of the 2nd prayer: That the deed from Herr to Barry was void, because by it all the property of Herr did not pass to Barry. The said deed not having been recorded within thirty days in York County, where a portion of his real estate was situated, and because said deed was not intended to convey all the property of said Herr.

3rd. In support of 3d prayer: That the said deed is void, because it was not acknowledged before some judge of a Court of probate or record, of a State or Territory, as required by the statute of Pennsylvania, and was not intended to convey the real estate in Pennsylvania.

4th. In support of the 4th prayer: That the deed is void, because the said John Herr. a resident of Pennsylvania, where preferences are forbidden, came to Maryland, and in violation of the laws of his own State, and the rights of his creditors, executed a deed making preferences.

5th. In support of the 5th prayer: That so far as personal property is concerned, the deed is ineffective, because the statutes of Pennsylvania forbid any preferences to be made, and the personalty must be governed by the law of the domicil of the said John Herr, and the deed is therefore void as against creditors. *Wilson vs. Carson*, 12 *Md. Rep.*, 72. *Story on Confl. of Laws*, 364, 365. *Gardner vs. Lewis*, 7 *Gill*, 395. *Trasher vs. Everhart*, 3 *G. & J.*, 242.

*Wm. Schley*, for the appellee :

The first prayer proposed to leave to the jury to find, as a fact, that *"by the laws of Pennsylvania, deeds of the nature* of that offered in evidence, from the defendant to the garnishee, were, at the execution thereof, *void*, as to the preferences therein given,"* &c. Now the only evidence, as to the laws of Pennsylvania, were the four statutes at pages 21 and 22 of the record. Whether or not these statutes were *proved*, was to be decided *by the Court*. *Wilson vs. Carson*, 12 *Md. Rep.*, 75. But even if without impropriety, the mere question of fact might have been submitted to the jury; yet, the *effect* of those statutes was to be decided by the Court; and it appertained to the province of the Court to declare what was the *law* of Pennsylvania in relation to said deed. But the prayer has the further vice of proposing to leave it to the jury to find the law of Pennsylvania, in relation to deeds of *the nature* of that offered in evidence. Can the jury be required to expound the statutes of Pennsylvania, for the purpose of ascertaining law, arising therefrom, in relation to the *class* or *classes* of deeds embraced within the provisions of those statutes? and, having first determined to what class or classes of deeds the statutes relate, then to determine the *nature* of deeds of such class or classes; and having performed this duty, then to ascertain *the nature* of the said deed, offered in evidence in this case; and having performed that duty, then to compare the said deed, offered in evidence in this case, with the deed or deeds, embraced within the provi-

sions of said statutes, for the purpose of further answering, whether the *nature* of the respective deeds are the same or not. Such an instruction, if granted, would have bewildered the jury. It was an offer to explain *ignotum per ignotius*. But the prayer had a still greater vice, in legal contemplation; because it proposed to the Court to leave to the jury, to find the deed *void,* as to the preferences therein given; whereas, the statutes offered in evidence expressly declared, not that the deed shall be void, but that *the preferences* shall be inofficious, and the trust shall enure to the benefit of *all* creditors, proportionately, in disregard of the expressed provision for preferences.

The *second* prayer is obnoxious to the same objections, as it embodies the hypothesis of the first prayer. It has the additional defect of proposing to leave it to the jury to find that, "by the laws of Pennsylvania, the deed was void, unless *recorded,*" &c. There was no evidence as to the laws of Pennsylvania, in relation to recording deeds, except the said statutes; and it was for *the Court* and not *the jury*, to determine the law of Pennsylvania, in this respect, upon just construction of the statutes.

The *third* prayer is contaminated with the vices of the two preceding prayers. It embodies the hypotheses of both those prayers.

The *fourth* and *fifth* prayers, in their structure are open to the same objections. Each of said prayers embodies all the preceding prayers. But both these prayers contained the further defects, of proposing to leave to the *jury* what appertained to the province of the Court.

BARTOL, J., delivered the opinion of this Court:

We have examined with much care, the interesting questions presented in the briefs, and argued with great ability by counsel; and have prepared an opinion stating the conclusions we have reached upon the several points argued. But upon mature consideration we deem it unnecessary and improper, in disposing of this appeal, to go

beyond what was actually decided by the Court below. The only exception taken by the appellant was, to the rejection by the Superior Court of the five prayers offered by the plaintiff below, (now appellant.) If for any reason these prayers were defective there was no error in rejecting them; and the judgment must be affirmed, whatever opinion this Court may entertain upon other questions which the prayers were intended to present.

In the course of the trial below, the plaintiff gave in evidence certain laws of Pennsylvania, declaring the effect of assignments made by debtors in failing circumstances, for the benefit of their creditors, prescribing the time and place for recording such assignments, and also directing the mode in which deeds, conveying lands in that State, if made out of the limits thereof, shall be executed, acknowledged and recorded. These laws were proved by producing the printed statute books of that State. In each of the prayers offered, the Court was asked to submit to the jury the construction of those laws, and their effect upon the deed of trust made by John Herr to the appellee.

Was it within the province of the jury to pass upon those questions? If not, then the objection to the prayers urged by the appellee, "that they called on the Court to submit to the jury a question of law," would be fatal.

The appellant contends, that foreign laws must be proved as facts, and that their construction is exclusively for the jury, and in support of that position has cited *Trasher vs. Everhart*, 3 *G. & J.*, 242, *Gardner vs. Lewis*, 7 *Gill*, 395. and *Wilson vs. Carson*, 12 *Md. Rep.*, 72. A brief examination of these cases will show that they do not sustain the appellants' view.

In *Trasher vs. Everhart*, Judge Archer stated the general rule to be, that foreign laws are facts to be found by the jury, but the point decided in that case was, that "when a foreign law is offered for the purpose of enabling the Court to determine a question of law, viz: 'whether a written instrument is evidence?' in such case the evidence

always goes in the first instance to the Court, which, if the evidence be clear and uncontradicted, may and ought to decide what the foreign law is, and according to its determination on that subject, admit or reject the instrument of writing as evidence to the jury.''

In *Gardner vs. Lewis*, there was no decision upon this point, for in that case ''no evidence (of the foreign law) was offered either for the Court or the jury.''

The case of *Wilson vs. Carson*, so far from supporting the appellants' position, seems to us to establish the contrary. That case will be more particularly noticed presently.

The question here is not, how is the foreign written law to be proved; but, when it is proved by the production of the written statutes, whose province is it to construe it, and to determine its effect and bearing upon the case before the Court. On this subject we have examined all the authorities and decided cases within our reach, and have arrived at the following conclusion: That although the *factum* of a foreign law is for the jury to find upon the evidence, yet it is the duty of the Court to construe it, especially if it be in writing, and to direct the jury as to its force and effect.

This view is, in our opinion, not only consistent with reason and analogy, but is supported by the weight of authority.

*Mostyn vs. Fabrigas, Cowper,* 174, *Lord Mansfield,* said: ''The way of knowing foreign laws is by admitting them to be proved as facts, and the Court must assist the jury in ascertaining what the law is.''

In *Consequa vs. Willing,* 1 *Peters' C. C. R.,* 229, *Justice Washington,* after stating how the laws of foreign countries may be proved, says: ''When proved (I admit) it is for the Court to construe them, and to decide upon their effect.''

*Judge Story* in his work on the conflict of laws, *sec.* 638, says: ''The Courts are therefore to decide what is the proper evidence of the laws of a foreign country; and when evidence is given of those laws, the Court are to judge of their

applicability, when proved, to the case in hand," And in the same section the learned author remarks: "for all matters of law are properly referable to the Court, and the object of the proof of foreign laws is to enable the Court to instruct the jury what, in point of law, is the result of the foreign law to be applied to the matters in controversy before them." Mr. Greenleaf adopts the same view, and cites the language of Judge Story just quoted. See 1 *Greenleaf's Evidence, sec.* 486.

Among the cases cited by Judge Story is *De Sobre vs. De Laister*, in 2 *H. & J.*, 192. The marginal note of that decision on this point is as follows: "The laws of a foreign country are to be proved by evidence, and the Court are to decide what is proper evidence of such laws, and to construe them, and judge of their applicability to the question before the Court." See also pages 219 and 229, (*a.*)

In *Wilson vs. Carson*, 12 *Md. Rep.*, 75. Parol evidence was introduced to prove the unwritten laws of Kentucky. Judge Frick, who sat at the trial below, "decided that the testimony of Bodley and Pope, in relation to the law of Kentucky, was for the Court and not the jury, and that said testimony was legal and competent evidence; and accordingly instructed the jury, that the clauses and provisions in said deed of trust were, according to the law of Kentucky, legal and valid, and, by such law, sufficient to convey to the grantee therein named, the property by said deed mentioned to be conveyed." And the Court of Appeals in affirming the judgment say, (on page 75:) "We think so far as proof of the law of Kentucky is concerned, the Court below correctly stated the law."

These authorities are sufficient to show, that the construction of the laws of Pennsylvania, offered in evidence in this case, was for the Court and not for the jury, and that consequently there was no error in rejecting the appellants' prayers, as they all propose to leave it to the jury to construe the laws of Pennsylvania, and to decide their applicability to, and effect upon, the deed of John Herr to the appellee.

The law of this Court is well established, that a judgment will not be reversed on account of the refusal by the Court below to grant a prayer which submits a question of law to the jury. See *Osceola Tribe, &c., vs. Rost,* 15 *Md. Rep.,* 296, 297, and cases there cited.

This cause having originated and been decided below, before the passage of the Act of 1862, ch. 154, that Act in our opinion is inapplicable to this appeal.

*Judgment affirmed.*

(Decided Dec'r 7th, 1863.)